UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAMON REYES NOYOLA,

    Petitioner,

vs.                              Case No. 2:05-cv-523-FtM-29SPC

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____

## OPINION AND ORDER

### I. Status

Petitioner, Ramon Reyes Noyola, (hereinafter "Petitioner" or "Noyola"), initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #2) pursuant to 28 U.S.C. § 2254 in the United Stated District Court for the Southern District of Florida on August 2, 2005.[1] The case was subsequently transferred to this Court on November 4, 2005 (Doc. #1). Noyola challenges his September 23, 2003 state court judgment of conviction for DUI manslaughter arising in the Twentieth Judicial Circuit Court, Collier County, Florida (case number 02-252-CFA) for

---

[1] The Petition (Doc. #2) was docketed and filed in the United States District Court for the Southern District of Florida on August 5, 2005; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

which he was sentenced to 15 years imprisonment. Petition at 1-2.[2]

The Petition raises the following two grounds for relief:

> I. The Petitioner's confession was not freely and voluntarily given and therefore should have been suppressed.
>
> II. The Petitioner was denied due process of law where the state destroyed evidence which a defense expert testified would have been beneficial on the issue of causation.

Id. at 4, 16. In accordance with the Court's Order to Show Cause (Doc. #10), and after being afforded two extensions of time (Docs. #13 and #16), Respondent filed a Response to the Petition (Doc. #17, Response) on October 26, 2006. Respondent also filed an appendix identifying exhibits (Doc. #20) in support of the Response, including a copy of the transcripts from the various pretrial hearings and the thirteen volume record on appeal (Exhs. 1-8). Petitioner filed a Reply to the Response (Doc. #18, Reply), incorporating his arguments set forth in the Petition, on November 6, 2006. This matter is ripe for review.

## II. Procedural History

Petitioner was convicted, after a jury trial held on August 19-22, 2003, of DUI Manslaughter (victim Robert Cooper), DUI Property Damages, and DUI Personal Injury (victim Dillon Cooper). On September 26, 2003, Petitioner was sentenced to 15 years imprisonment on the DUI Manslaughter count; and to one year

---

[2]Unless specified otherwise, all page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

incarceration in the county jail on each of the remaining two counts, to run concurrently. Noyola received 609 days credit for time served. Represented by Special Assistant Public Defender, Tonja R. Vickers, Noyola pursued a direct appeal, raising five grounds for relief, including the same two grounds raised in the Petition *sub judice*. Exh. 1. The State filed an answer brief. Exh. 2. On October 22, 2004, the appellate court *per curiam* affirmed Petitioner's conviction and sentence, without written opinion. Exh. 3; Noyola v. State, 887 So. 2d 343 (Fla. 2d DCA 2004).

### III. Applicable § 2254 Law

Noyola filed his timely[3] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). See

---

[3]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent does not assert that the Petition is time barred. The Court independently finds that the Petition was timely filed.

also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

In particular, a federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court

issues its decision.  Carey v. Musladin, 549 U.S. 70, ___ , 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law."  Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result.  Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16.  Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them."  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable

-5-

manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is

presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim. Davis v. Sec'y Dep't of Corr., 341 F.3d 1310, 1313 (11th Cir. 2003).

## IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

The Court incorporates herein, by reference, the factual narrative set forth in the Initial Brief of Appellant, as supplemented by the State's Answer Brief. Exhs. 1 and 2, respectively. In brief, Petitioner, while driving intoxicated, failed to yield the right-of-way while making a turn and hit a pick-up truck, resulting in the truck driver's death and truck driver's young son being injured. The Court has reviewed the full appellate record, including the transcript from the suppression hearing, the transcript from the pre-trial hearing on the defense's motion to dismiss, and the trial transcript, to the extent relevant. The Court will cite to pertinent portions of the record and transcripts, to the extent relevant in assessing both grounds raised in the Petition.

**GROUND I**

In his first Ground for relief, Petitioner asserts that the trial court committed error by denying the defense's motion to suppress Noyola's confession, thereby allowing the confession to come into evidence. Petition at 6. Specifically, Petitioner argues that he did not "knowing and freely waive his rights" under Miranda v. Arizona, 384 U.S. 436 (1966), because he was "unable to understand his rights, which were read in English, instead of Spanish, his native language." Id.

Petitioner's trial counsel initially raised this Miranda issue in a motion to suppress. Transcript of Suppression Hearing, Exh. 5. The trial court held a hearing on February 26, 2003 on the motion to suppress and subsequently denied the motion. Exh. 8, Vol. I at 66-67. Petitioner later raised this same ground as issue III in his direct appeal. Exh. 1 at 40-49. The State addressed the issue in its reply brief. Exh. 2 at 44-58. The appellate court *per curiam* affirmed the trial court's decision and mandate issued. See Exhs. 3-4.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The United States Supreme Court in Miranda v. Arizona considered the scope of this Fifth Amendment guarantee against self incrimination. Miranda, 384 U.S. 436 (1966). In Miranda, the Court held that

before a suspect, in custody, can be interrogated, the suspect must be informed of his right to remain silent, that what he says can be used against him, and the right to have an attorney during interrogation, or if he cannot afford an attorney, the right to have one appointed. Id. at 478-479. It is clearly established federal law that a state cannot introduce a suspect's testimony provided in the absence of an attorney without first showing that the suspect made a voluntary, knowing, and intelligent waiver of his Miranda rights. Hart v. Attorney General for Fla., 323 F.3d 884, 891 (11th Cir. 2003). A two-prong test is required to determine whether a waiver was voluntary, knowing, and intelligent is twofold:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court conclude that the Miranda rights have been waived.

Moran v. Burbine, 465 U.S. 412, 421 (1986)(quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)). Courts look at four factors, none of which are independently dispositive, to determine whether a statement is voluntary: (1) whether the Miranda warning was given; (2) "'[t]he temporal proximity of the arrest and the confession'"; (3)"'the presence of intervening factors'";(4) "'the purpose and flagrancy of the official misconduct.'" Lawhorn v. Allen, 519 F.3d

1272, 1291 (11th Cir. Mar. 11, 2008). To determine "knowing" and "intelligent" waiver of Miranda rights, the courts focus on the suspects' comprehension of their rights. Blanco v. Singletary, 943 F.2d 1477, 1509-1510 (11th Cir. 1991)(citing Mincey v. Arizona, 437 U.S. 385 (1978)). "'If a defendant cannot understand the nature of his rights, he cannot waive them intelligently.'" Miller v. Dugger, 838 F.2d 1530, 1539 (11th Cir. 1988).

During the hearing on the motion to suppress, the court heard testimony from Trooper Coburn, who was the homicide investigator for the Florida Highway Patrol, State Trooper Alonso (collectively "State Troopers"), and Petitioner. See generally Exh. 5. The State Troopers were both present during Petitioner's interrogation. Id. at 10. The trial court heard testimony that the interview occurred in an interview room at the Collier County Jail at approximately 2:00 a.m., between 2-4 hours after the car crash. Id. at 43 and 58.[4] Trooper Coburn testified that, before he began questioning Petitioner, he asked Noyola whether he wanted an interpreter. Id. at 37.

> When [Noyola] first walked in, I introduced myself to him and I explained to him that I was doing a criminal investigation, and that Trooper Alonso was doing a crash investigation, even though he had -- also was doing a criminal investigation. Prior to the death, it was his investigation, and then it was turned over to me because of the fatality.

---

[4] The accident occurred at 10:05 p.m., according to the Florida Highway Patrol report. Exh. 5. at 58.

-11-

> I asked him if he understands English, he said yes. I said, "Well, Trooper Alonso happens to speak Spanish, he's fluent in Spanish. He's here because he's the crash investigator, however, he can interpret to you, if you wish," and he said, no, that we'll go ahead with English. Because I have this form in Spanish and in English, and he said we would go ahead with English, and I told him if at any point he wanted to converse back in Spanish, because sometimes they like to -- people that speak Spanish can expresses [sic] themselves better in Spanish than in English, so at some point he wished to do that to feel free to, and Trooper Alonso would translate it.

<u>Id.</u> Trooper Coburn further explained that:

> I do not believe that he needed an interpreter. He showed no signs of needing an interpreter. I asked him if he wanted it to be done in Spanish, just because obviously looking at him he is Hispanic, he said no, so I go with it in English.

<u>Id.</u> at 53. Trooper Coburn then tape recorded the interview with Petitioner. <u>Id.</u> at 13. The tape was admitted into evidence at the suppression hearing, and was played, as well as transcribed. <u>Id.</u> at 16. Trooper Coburn read the <u>Miranda</u> waiver form[5] to Petitioner. <u>Id.</u> at 11-12. Noyola stated he did not want to sign the form. <u>Id.</u> at 13-18. Trooper Coburn then asked Petitioner if he wanted to speak with them and Petitioner stated "Uh-huh." <u>Id.</u> at 17. Petitioner was then sworn in. <u>Id.</u> at 18. Petitioner stated that he understood that he had been placed under arrest for DUI, and for DUI manslaughter because the victim died. <u>Id.</u> at 25. The only word Trooper Coburn thought Petitioner had trouble understanding during the interview was the word "familiar." <u>Id.</u> at 45. The

---

[5]The <u>Miranda</u> rights are set forth on the Florida Highway Patrol's "Sworn Interview Advice of Rights" form.

-12-

interview lasted approximately 26 minutes. Id. at 36. Trooper Coburn denied ever threatening Petitioner, coercing him, or promising him anything. Id. at 38. Petitioner did not request an attorney at any time during the interview or after the interview was concluded. Id. at 38-39. The interview concluded and all questioning terminated, when Noyola told the State Troopers that he did not want to talk anymore. Id. at 63, 65.

Trooper Alonso, who is fluent in both English and Spanish, testified that he first encountered Petitioner at the crash scene. Id. at 56. Trooper Alonso recalled that he interviewed the Petitioner in English and Petitioner answered him in English at the accident scene. Id. at 57. Noyola was very cooperative at the scene. Id. at 58. Trooper Alonso administered filed sobriety tests in English at the accident site on Noyola. Id. Trooper Alonso was also present at the jail during Petitioner's interview. Id. at 60. Noyola never indicated that he did not want to talk with the Troopers and never requested an attorney. Id. at 61. Trooper Alonso witnessed Trooper Coburn read Noyola his Miranda rights before conducting the interview. Id. at 62. Noyola indicated that he wanted to talk to the Troopers but did not want to sign the form. Id. at 63. Alonso spoke to Noyola in Spanish a few time during the interview, but only to clarify questions, and Noyola answered him in both English and Spanish. Id. at 61.

On direct examination, Noyola testified that he came to the United States when he was 19 years of age, and at the time of the

-13-

accident was 37 years of age. Id. at 74. He only attended school until the third grade in Mexico, but did take English classes for two months after he arrived in the United States. Id. at 75. He works in the construction trade. Id. He testified he uses English as much as he can. Id. at 76. When asked if he understood on the evening of the accident that he was being arrested for manslaughter, Noyola stated: "No, in reality I did not know. I was not aware of that word until just now. I did not know the definition of that word." Id. Noyola thought he was being questioned because of the accident. Id. When asked if he you knew he had a "right to have a lawyer," Noyola said "I did not know at the time I needed one." Id. at 79. When asked if he knew he had the right to refuse to talk at all, he replied "In some parts, yes, in some other parts, no." Id. He denied knowing why his blood was being drawn at the accident scene. Id. Petitioner thought if he signed the waiver form, he was admitting he was "100 percent" guilty of causing the victim's death. Id. at 81. But then, Petitioner denied knowing that the other driver had died. Id. Noyola denied being given the choice to be questioned in English or Spanish, and did not understand that Alonso was there to interpret if he needed help. Id. at 83.

On cross-examination, Noyola denied watching English speaking television, but admitted that he watches English speaking movies. Id. During the hearing, Noyola admitted that he had previously been arrested for DUI, as well as other felonies. Id. at 87. He

claimed that he was never read his Miranda rights for any crime. Id. at 89. He testified that his girlfriend of seven years does not speak any Spanish, and he speaks only a "little bit" of English with her. Id. at 90. Petitioner first denied that Trooper Alonso spoke English to him at the scene, but then admitted that Alonso did conduct the sobriety tests in English at the scene. Id. at 91. Petitioner denied that he was threatened, made to talk, or tricked into talking. Id. 92.

At the conclusion of the suppression hearing, the trial court took the matter under advisement in order to review the cases submitted by counsel and stated he "may have to review the tape also." Id. at 118. On March 6, 2003, the trial court, in orally denying Petitioner's motion to suppress, concluded as follows:

> Based on the totality of the circumstances, including the review of the tape played in court, the testimony of the Investigator [Coburn] and Trooper [Alonso] and the Defendant Ramon Noyola, the Court finds the State has proven by a preponderance of the evidence that the defendant made a knowingly [sic], voluntary, and intelligent waiver of his Miranda rights on the morning of January 27th, even though he did not sign the Miranda waiver form.
>
> Further, this Court finds that the Defendant understood English sufficiently as it was evidenced by the testimony and the exhibits presented at the hearing as well as the testimony by the police officers that the answers Mr. Noyola gave in English are appropriate answers in an appropriate way when the questions were given to him. As such, the Court will deny the Motion to Suppress.

Exh. 8, Vol. 1 at 66-67.

Based upon a review of the record and considering the totality of the circumstances, the Court finds Ground One without merit.

Here, the trial court's decision was neither contrary to, nor involved an unreasonable application of clearly established federal law. Further, the trial court did not apply an unreasonable determination of facts in light of the evidence presented in the State court proceeding. Both deputies testified that Petitioner was read his Miranda rights, he answered the questions in context and in English, and never asked for an attorney. The record reflects that Petitioner had been in the United States for 19 years, and had previously been involved in the criminal justice system. Based on the foregoing, the Court denies relief as to Ground One on the merits.

**Ground II**

In his second ground for relief, Petitioner claims that his due process rights were violated due to the State destroying potentially exculpatory evidence. Petition at 16. In particular, Petitioner claims that the State failed to notify defense counsel prior to releasing the vehicles that were involved in the crash, denying the defense favorable, exculpatory evidence. Id. at 18. Defense counsel first raised this issue in a motion to dismiss. Exh. 8, Vol. I at 54-55. On July 24-25, 2003, the trial court held a hearing on, *inter alia*, the defense's motion to dismiss the charges. Transcript of Hearing on Motions, Exh. 6 and Exh. 7. Upon conclusion of the evidence, the trial court denied the defense's motion to dismiss. Exh. 7 at 39. Petitioner later

raised this same ground as issue IV in his direct appeal. Exh. 1 at 50-54. The State addressed the issue in its reply brief. Exh. 2 at 58-62. The appellate court *per curiam* affirmed the trial court's decision and mandate issued. See Exhs. 3-4.

At the hearing, Trooper Coburn testified that according to the tow report, the vehicles were towed from the accident scene on January 26, 2002, at 11:35 p.m., by Yoder's towing. Exh. 6 at 56. Trooper Coburn processed the vehicles on January 30, 2002, at 10:40 a.m. at Yoders. Id. He testified that he did not make any efforts to remove "the black box" from the vehicles because, due to the age of the vehicles, he "[didn't] believe these vehicles have them." Id. at 54. The vehicles were then released on February 1, 2002, to a wrecking company. Id. at 56-57. Trooper Coburn notified the State Attorney who determined not to place a hold on the vehicles. Id. at 57. Trooper Coburn did not base his conclusion as to the cause of this accident solely on the condition of the vehicles. Id. at 59. Instead, he relied on the "witness statements, the intersection layout, itself, with the traffic lights, and the damage to the vehicles," as well as Noyola's statement. Id. at 59-60. Trooper Coburn further testified that, even assuming the victim was speeding, the cause of the accident still would have been the violation of the right-of-way. Id. at 63.

An investigator with the Public Defenders' Office testified that the car operated by Noyola, which was owned by his girlfriend, was sold to a salvage company and crushed; and, the victim's car

-17-

was sold by the insurance company to a salvage yard, who resold it to Auto World in Miami, who then sold it to a private owner. Exh. 7 at 5-6. Neither vehicle was available for inspection at the time the Public Defender's office assumed Noyola's representation. Id. On cross examination, the investigator stated that he had not talked to the new owner of the victim's truck but was told it was repaired. Id. at 7. He had not requested an order to have the truck examined and did not determine whether the black box had been changed in the truck when it was repaired. Id.

The Court also heard testimony from Mr. Swope, an expert retained by the defense to reconstruct the accident, who disagreed with Trooper Coburn's assessment of the accident. Mr. Swope testified that black box would have been beneficial in confirming the speed of the victim's vehicle, whether the headlights were on in the victim's vehicle, whether the victim's vehicle decelerated prior to impact, and, whether the victim's seatbelt was operational and activated. Id. at 16-20. Mr. Swope explained that if the vehicle was repaired and the air bag system was reinstalled, the information on the black box would have been reset and no longer relevant. Id. at 20.

The trial court, after hearing all the evidence, denied the motion to dismiss as follows:

> Based on the testimony as well as the evidence presented, the Court finds that the State did not deliberately - did not use bad faith in not continuing to hold onto these vehicles.

> I'm going to find that it was not a denial of the Defendant's due process. And just like [defense counsel] just said, you'll certainly be able to ask both Officer Coburn as well as Mr. Swope the questions that you just posed and whether if the victim is traveling at a high rate of speed, whether the Defendant would have been at fault if he made a left-hand turn. So that motion is denied.

Exh. 7 at 39.

The Petitioner and the State, both at the hearing and in their respective briefs on direct appeal, cited to Arizona v. Youngblood, 488 U.S. 51 (1988) as the controlling authority in connection with this issue. Exh. 7 at 33- 39; Exh. 1 at 54, Exh. 2 at 59. Arizona holds that if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence. Id. at 58. Here, the trial court explicitly found that the State did not act in bad faith in failing to place a hold on the vehicles. Exh. 7 at 39. A state court's factual finding is presumed to be correct, and a petitioner is required to rebut the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Here, Petitioner makes no such showing. Further, the trial court's decision was neither contrary to, nor involved an unreasonable application of clearly established federal law. Nor did the trial court apply an unreasonable determination of facts in light of the evidence presented in the State court

-19-

proceeding.  Thus, Petitioner is not entitled to relief on his second ground of the Petition.

Based upon the foregoing and an exhaustive review of the record, the Court will deny the Petition with prejudice.  Any other claims not specifically addressed are found to be without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition for Writ of Habeas Corpus (Doc. #2) is **DENIED**.

2.  The **Clerk of the Court** shall enter judgment accordingly; terminate any pending motions; and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___9th___ day of February, 2009.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record